UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA *ex rel.*     :
NAJMUDDIN PERVEZ,                      :
                                       :
                 Plaintiff,            :
                                       :        06 Civ. 4989 (LAP)
        - against -                    :
                                       :        ECF CASE
MAIMONIDES MEDICAL CENTER and          :
ERNST & YOUNG LLP,                     :
                                       :
                 Defendants.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## MAIMONIDES MEDICAL CENTER'S MOTION TO DISMISS

Edward S. Kornreich
Roger A. Cohen
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

James F. Segroves[*]
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
(202) 416-6800

*Counsel for Defendant*
*Maimonides Medical Center*

[*]*Motion For Admission Pro Hac Vice To Be Filed*

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

STATUTORY BACKGROUND ................................................................................. 2

FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND ....................................... 4

ARGUMENT ............................................................................................................. 8

I.    The Court Should Dismiss Relator's Complaint With Prejudice Under Rule 41(b) Because Relator Deliberately Refused To Prosecute This Four-Year-Old Action Seeking Billions Of Dollars For More Than One Year After The United States Declined To Intervene And For Almost One Year After The Complaint Was Unsealed ...................................................................................................... 8

II.    The Court Should Dismiss Relator's Complaint Under Rule 12(b)(5) Because Relator Deliberately Refused To Effect Service Of The Complaint Within The 120-Day Deadline Established By Rule 4(m) ........................................................... 16

CONCLUSION ........................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Allison Engine Co. v. United States ex rel. Sanders*,
　128 S. Ct. 2123 (2008) ................................................................................................ 3

*Bey v. U.S. Postal Serv.*,
　No. 03 Civ. 4081 (LAP), 2005 WL 2923516 (S.D.N.Y. Nov. 4, 2005) .................................. 18

*Brown v. City of South Burlington*,
　393 F.3d 337 (2d Cir. 2004) ......................................................................................... 12

*Chira v. Lockheed Aircraft Corp.*,
　634 F.2d 664 (2d Cir. 1980) ................................................................................ 12, 13, 16

*Deptuch v. Abraham Joshua Heschel School*,
　No. 06 Civ. 6000 (LAP), 2007 WL 4462194 (S.D.N.Y. Dec. 17, 2007) .............................. 18

*Dodson v. Runyon*,
　86 F.3d 37 (2d Cir. 1996) ............................................................................................ 14

*Henderson v. United States*,
　517 U.S. 654 (1996) ................................................................................................... 17

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
　520 U.S. 939 (1997) ................................................................................................... 15

*Link v. Wabash R.R. Co.*,
　370 U.S. 626 (1961) ......................................................................................... 8, 11, 12

*Lyell Theatre Corp. v. Loews Corp.*,
　682 F.2d 37 (2d Cir. 1982) ..................................................................................... 12, 13

*McKibben v. Credit Lyonnais*,
　No. 98 Civ. 3358 (LAP), 1999 WL 604883 (S.D.N.Y. Aug. 10, 1999) ............................... 18

*Ruzsa v. Rubenstein & Sendy Att'ys at Law*,
　520 F.3d 176 (2d Cir. 2008) .................................................................................... 11, 13

*SEC v. Shehyn*,
　No. 04 Civ. 2003 (LAP), 2008 WL 6150322 (S.D.N.Y. Nov. 26, 2008) ............................... 9

*United States ex rel. Cody v. Computer Sci. Corp.*,
　246 F.R.D. 22 (D.D.C. 2007) ................................................................................... 2, 16

*United States ex rel. Drake v. Norden Sys., Inc.*,
　375 F.3d 248 (2d Cir. 2004) ................................................................................ *passim*

*United States ex rel. Howard v. Life Care Ctrs. of Am., Inc.*,
No. 1:03-CV-41, 2005 WL 2674939 (E.D. Tenn. Oct. 20, 2005) ............................................ 16

*United States ex rel. LeBlanc v. ITT Indus.*,
492 F. Supp. 2d 303 (S.D.N.Y. 2007) .................................................................................. 16

*United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*,
377 F.3d 145 (2d Cir. 2004) ................................................................................................... 12

*United States ex rel. Pilon v. Martin Marietta Corp.*,
60 F.3d 995 (2d Cir. 1995) ..................................................................................................... 16

*United States v. Aguillon*,
628 F. Supp. 2d 542 (D. Del. 2009) ......................................................................................... 2

*United States v. Baylor Univ. Med. Ctr.*,
469 F.3d 263 (2d Cir. 2006) ..................................................................................................... 3

*United States v. Sci. Applications Int'l Corp.*,
___ F. Supp. 2d ___, Civil Action No. 04-1543 (RWR),
2009 WL 2929250 (D.D.C. Sept. 14, 2009) ............................................................................ 2

*Vincent v. Reynolds Mem'l Hosp., Inc.*,
141 F.R.D. 436 (N.D. W. Va. 1992) ...................................................................................... 18

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) .................................................................................................................. 3

## STATUTES

Act of Mar. 2, 1863, ch. 67, 12 Stat. 696 ..................................................................................... 2

False Claims Act, 31 U.S.C. §§ 3729-3733 ................................................................................... 1

31 U.S.C. § 3729(a) ...................................................................................................................... 4

31 U.S.C. § 3729(a)(1) ............................................................................................................. 2, 6

31 U.S.C. § 3729(a)(2) ......................................................................................................... 2, 3, 6

31 U.S.C. § 3729(a)(3) ............................................................................................................ 2, 3

31 U.S.C. § 3729(a)(7) ............................................................................................................ 2, 6

31 U.S.C. § 3729(b) ...................................................................................................................... 3

31 U.S.C. § 3730(b)(1) .................................................................................................................. 3

- iii -

31 U.S.C. § 3730(b)(2) ........................................................................... 3

31 U.S.C. § 3730(b)(3) ........................................................................... 3

31 U.S.C. § 3730(c)(1) ........................................................................... 3

31 U.S.C. § 3730(c)(3) ........................................................................... 3

31 U.S.C. § 3730(d)(1) ........................................................................... 4

31 U.S.C. § 3730(d)(2) ........................................................................... 4

Fraud Enforcement and Recovery Act of 2009,
   Pub. L. No. 111-21, 123 Stat. 1617 ................................................... 2

## LEGISLATIVE MATERIALS

H.R. Rep. No. 111-97 (2009) ............................................................. 4, 14

S. Rep. No. 99-345 (1986),
   *reprinted in* 1986 U.S.C.C.A.N. 5266 ............................................ 3, 17

## RULES AND REGULATIONS

28 C.F.R. § 85.3(a)(9) ........................................................................... 4

Fed. R. Civ. P. 4(m) ............................................................... 1, 16, 17, 18

Fed. R. Civ. P. 9(b) ............................................................................... 1

Fed. R. Civ. P. 12(b)(5) .............................................................. 1, 16, 18

Fed. R. Civ. P. 12(b)(6) .................................................................. 2, 18

Fed. R. Civ. P. 41(b) ..................................................................... *passim*

## OTHER AUTHORITIES

Administrative Office of the U.S. Courts, *2008 Annual Report of the Director:
   Judicial Business of the United States Courts* (2009) ...................... 13, 14

Docket Entry No. 26, *United States ex rel. Pervez v. Beth Israel Med. Ctr.*,
   No. 01 Civ. 2745 (LAK) (S.D.N.Y. Nov. 30, 2005) ............................. 14

Note, *Qui Tam Provisions And The Public Interest: An Empirical Analysis*,
   107 Colum. L. Rev. 949 (2007) ........................................................ 15

Defendant Maimonides Medical Center ("Maimonides") respectfully submits this memo-
randum of law in support of its motion to dismiss Plaintiff-Relator Najmuddin Pervez's ("Rela-
tor's") Complaint.

## PRELIMINARY STATEMENT

This is a *qui tam* action brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-
3733.  The Complaint alleges that Maimonides and Ernst & Young ("E&Y") (collectively,
"Defendants") engaged in a decade-long conspiracy to defraud the Medicare program of tens of
millions of dollars that should result in the imposition of over $2 billion in civil penalties.  The
United States investigated the Complaint's allegations and declined to intervene in this matter
more than one year ago, leaving Relator with sole responsibility for prosecuting this action.
Tasked with that responsibility, Relator violated this Court's instructions and the Federal Rules
of Civil Procedure by intentionally delaying service of the Complaint for almost one year after
its unsealing in a failed effort to gain a strategic advantage over Defendants.

As set forth more fully below, the Complaint should be dismissed because of two blatant
procedural violations: (1) Relator's unilateral decision to delay prosecution of this case at the
expense of Maimonides's due process rights should result in a with-prejudice dismissal under
Federal Rule of Civil Procedure 41(b); and (2) Relator's unilateral decision not to serve the
Complaint for almost one year after its unsealing violated Rule 4(m)'s 120-day service require-
ment, which should result in the Complaint's dismissal under Rule 12(b)(5) for insufficient
service of process.  The Complaint also suffers from several substantive defects, including the
fact that a substantial portion of the Complaint's legal claims are barred by the FCA's six-year
statute of limitations and the Complaint fails to plead fraud with particularity as required by Rule
9(b).  However, Maimonides respectfully requests leave to brief these and other substantive

issues in the event the Court finds the foregoing procedural violations nondispositive.  *See*
*United States ex rel. Cody v. Computer Sci. Corp.*, 246 F.R.D. 22, 25 n.4 (D.D.C. 2007) (noting
defendant's similar request that court address procedural issues like those raised by this motion
prior to requiring briefing on Rule 12(b)(6) grounds for dismissal).

### STATUTORY BACKGROUND

The FCA was enacted in response to fraud perpetrated upon the Union Army during the
American Civil War.  *See* Act of Mar. 2, 1863, ch. 67, 12 Stat. 696 (codified as amended at 31
U.S.C. §§ 3729-3733).  The version of the FCA applicable to this case creates a cause of action
against "[a]ny person" who "(1) knowingly presents, or causes to be presented, to an officer or
employee of the United States Government . . . a false or fraudulent claim for payment or ap-
proval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to
get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the
Government by getting a false or fraudulent claim allowed or paid; [or] . . . (7) knowingly
makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or
decrease an obligation to pay or transmit money or property to the Government . . . ." 31 U.S.C.
§ 3729(a)(1)-(3), (7) (2006).[1]

Save for two exceptions, no proof of specific intent to defraud is required to create liabil-
ity under the FCA, as the term "knowingly" includes a person who, with respect to information,
"acts in deliberate ignorance" or "in reckless disregard" of the "truth or falsity of the informa-

---

[1] All references to the United States Code in this memorandum of law are to the 2006
version.  Although Congress amended the FCA earlier this year, *see* Fraud Enforcement and
Recovery Act of 2009, Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1621-25, the amended version of
the FCA does not govern this case, *see United States v. Sci. Applications Int'l Corp.*, ___ F.
Supp. 2d ___, Civil Action No. 04-1543 (RWR), 2009 WL 2929250, at *14 (D.D.C. Sept. 14,
2009) (rejecting retroactive application of 2009 FCA amendments under similar circumstances);
*United States v. Aguillon*, 628 F. Supp. 2d 542, 551 (D. Del. 2009) (same).

tion." 31 U.S.C. § 3729(b).  The two exceptions occur under § 3729(a)(2) and (3), respectively.  Specific intent is a required element under each of these provisions.  *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2130-31 (2008).

The FCA is unique among federal statutes in that an action under the FCA can be initiated either directly by the United States or by a *qui tam* relator who sues for himself and for the United States.  31 U.S.C. § 3730(b)(1).  If the action is commenced by a relator, the complaint must be filed under seal and served on the United States, along with a written disclosure of substantially all material evidence and information in the relator's possession.  § 3730(b)(2).  The FCA instructs that the relator's complaint "shall remain under seal for at least 60 days . . . and shall not be served on the defendant until the court so orders."  *Id.*  The United States may ask the court to extend the seal period for good cause.  § 3730(b)(3).  Such extensions are routinely requested and granted.  *See, e.g.*, *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 266 (2d Cir. 2006) (noting that over eight-year period, sixteen requests to extend the seal period were granted).  *But see* S. Rep. No. 99-345, at 24-25 (1986) ("The Committee feels that with the vast majority of cases, 60 days is an adequate amount of time to allow Government coordination, review and decision."), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289-90.

If the United States decides to intervene, it then has primary responsibility for prosecuting the action.  31 U.S.C. § 3730(c)(1).  "If the Government elects not to proceed with the action," however, "the person who initiated the action shall have the right to conduct the action." § 3730(c)(3).

The FCA "imposes damages that are essentially punitive in nature."  *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784 (2000).  A defendant found liable under the statute is subject to civil penalties as great as $11,000 per claim, as well as treble

damages, attorneys' fees and costs.  31 U.S.C. §§ 3729(a), 3730(d)(1); 28 C.F.R. § 85.3(a)(9).

The relator shares in any recovery with the United States.  If the United States declines to

intervene, the relator receives between 25 and 30 percent of any recovery.   31 U.S.C.

§ 3730(d)(2).  If the United States intervenes, the relator's share is reduced to between 15 and 25

percent.  § 3730(d)(1).

The vast majority of FCA recoveries come in cases where the United States intervenes.

As explained by a recent House of Representatives report:

> More than 97% of the amounts received in settlements and judgments in *qui tam*
> cases have come in the 20% of the matters in which the Government has inter-
> vened.  In other words, fewer than 3% of recoveries have been derived from the
> 80% of the total investigative pool that the Justice Department has rejected.  In-
> deed, last year (through September 30, 2008), the Government recovered about
> $1.043 billion in *qui tam* FCA cases; of that total roughly $1.037 billion came
> from *qui tam* cases in which the Justice Department intervened and only about
> $5.9 million came from relators litigating declined cases.

H.R. Rep. No. 111-97, at 30 (2009) (dissenting views of Reps. Smith, Issa and Jordan).

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Relator commenced this action on June 28, 2006, by filing his Complaint in this Court

and serving it on the United States.  The docket indicates that Judge P. Kevin Castel entered an

order sealing this case on June 28, 2006.

The Complaint generally alleges that Maimonides, with the assistance of E&Y, defrauded

the Medicare program using two fraudulent schemes.  First, between 1995 and 2004, Maimon-

ides allegedly submitted "false" Medicare claims for evaluation and management services

("E&M Services") furnished by physicians participating in Maimonides's faculty practice plan

("FPP").  (Compl. ¶ 38.)  The Complaint does not allege that Maimonides billed for services

never provided.  Instead, Maimonides listed the physicians' offices as the "site of service" on

standardized claim forms known as Forms CMS-1500 when, according to Relator, the services

were actually furnished in offices that should have been assigned a "facility setting" code. (Compl. ¶ 37.)  The reason a "facility setting" code should have been designated, according to the Complaint, is that the FPP physicians rendered services from "premises owned, operated by and paid for by Maimonides and made available either at no cost or at lower than the market price." (Compl. ¶ 41.)  As a result, the Complaint alleges that these locations should have been considered "facility settings," not "non-facility settings." (*Id.*)

The Complaint alleges that E&M Services receive higher Medicare reimbursement when the services are furnished in "non-facility settings" such as "private doctors' offices," as opposed to "facility settings" such as hospitals. (Compl. ¶ 37.)  Overall, Relator alleges that Maimonides received $17 million in excessive Medicare reimbursement, an amount "generated by almost 190,000 falsely reported FPP Medicare patient services [claims] in the years 1995 through 2004." (Compl. ¶ 74.)  As support for its sweeping allegations, the Complaint cites a single April 20, 2005 explanation-of-benefits form sent to a patient of an FPP physician, which, according to Relator, evidences that a "false" Form CMS-1500 was previously sent to Medicare using the "non-facility settings" site-of-service code. (Compl. ¶¶ 66, 69.)  Were one to apply the FCA's per claim penalty provisions to their fullest (i.e., $11,000 per claim), the Complaint's allegations in this regard seek over $2 billion in civil penalties.

The Complaint's second general allegation is that Maimonides defrauded the Medicare program by "assigning expenses to reimbursable cost centers in its [annual] cost reports rather than setting them off against FPP practice income." (Compl. ¶ 51.)  According to the Complaint: "If a hospital assigns a cost that is not reimbursable by Medicare to a reimbursable cost center on its cost report, rather than to a non-reimbursable cost center, the result is that Medicare overpays the hospital unless the hospital's improper reporting (or cost allocation) is identified by the fiscal

intermediary [referring to the private insurance companies that help administer the Medicare program] or otherwise corrected by the hospital." (Compl. ¶ 79.) The Complaint estimates that Maimonides received $71 million in excess Medicare reimbursement between 1995 and 2004 because it improperly assigned certain expenses to reimbursable cost centers. (Compl. ¶ 100.)

Based on the foregoing, the Complaint parrots the language of the FCA and asserts four causes of action against Maimonides and E&Y. First, that they knowingly presented, or caused to be presented, false claims for payment, in violation of 31 U.S.C. § 3729(a)(1). (Compl. ¶ 126.) Second, that they knowingly used false records and statements to get false claims paid, in violation of 31 U.S.C. § 3729(a)(2). (Compl. ¶ 131.) Third, that they "knowingly made, used or caused to be made or used false records or statements to conceal, avoid or decrease an obligation to pay or transmit money or property to the United States," in violation of 31 U.S.C. § 3729(a)(7). (Compl. ¶ 135.) Fourth, that they "entered into one or more conspiracies to defraud the United States through the submission of false and fraudulent claims," in violation of 31 U.S.C. § 3729(a)(3). (Compl. ¶ 138.)

One day after the expiration of the initial 60-day seal period in this case, the United States asked the Court to extend the seal period until February 27, 2007. *See* Government's First *Ex Parte* Status Report [dkt. no. 11] (Aug. 28, 2006). The Court granted the Government's request. *See* First Endorsed Stipulation [dkt. no. 12] (Aug. 30, 2006). One day after the expiration of the February 27, 2007 deadline, the United States asked the Court to extend the seal period, *nunc pro tunc*, to August 28, 2007. *See* Government's Second *Ex Parte* Status Report [dkt. no. 13] (Feb. 28, 2007). The Court once again granted the Government's request. *See* Second Endorsed Stipulation [dkt. no. 14] (Mar. 5, 2007). One day after the expiration of the August 28, 2007 deadline, the United States asked the Court to extend the seal period, *nunc pro*

*tunc*, until February 28, 2008.  *See* Government's Third *Ex Parte* Status Report [dkt. no. 15] (Aug. 29, 2007).  Again, the Court granted the Government's request.  *See* Order of Aug. 30, 2007 [dkt. no. 16] (Aug. 30, 2007).

Finally, in a notice dated March 9, 2008, which was sent to the Court and Relator by a Government cover letter dated April 9, 2008, the United States informed the Court that, after having investigated Relator's allegations, the United States declined to intervene in this action. *See* Government's Notice of Election to Decline Intervention [dkt. no. 18] (Mar. 9, 2008); Letter from Sheila M. Gowan, U.S. Attorney's Office, to the Hon. Loretta A. Preska [dkt. no. 19] (Apr. 9, 2008).  The Court endorsed the Government's letter with an order, instructing: "Relator's counsel shall inform the Court of the status of the action no later than May 15, 2008."

It is unclear from the docket whether Relator responded by the Court's May 15, 2008 deadline.  Be that as it may, four months later the Court issued an order unsealing this case.  *See* Order of Sept. 23, 2008 [dkt. no. 8].  The unsealing order further instructed that "[c]ounsel for the relator shall inform the Court by letter no later than October 6, 2008 as to the status of the action/remaining claims/defendants."

The docket contains no evidence that Relator responded to the unsealing order by the October 6, 2008 deadline.  Three hundred and thirty-nine days after the Court unsealed this case and 506 days after the Government notified the Court and Relator that the United States declined to intervene in this matter, the Court sent Relator's counsel a facsimile enclosing a copy of the Court's unsealing order, implicitly reminding Relator of his failure to prosecute this case.  *See* Facsimile from Matthew Parrott, Law Clerk to the Hon. Loretta A. Preska, to Philip R. Michael, Troutman Sanders LLP (Aug. 28, 2009) (copy attached as Exhibit A).

By letter dated September 1, 2009, Relator's counsel advised the Court that the "unsealed complaint shall be served upon the named defendants this week."  Endorsed Letter from Philip R. Michael, Troutman Sanders LLP, to Matthew Parrott, Law Clerk to the Hon. Loretta A. Preska [dkt. no. 20] (Sept. 1, 2009).  "The reason I have delayed this action," Relator's counsel explained, "is related to a substantive discussion I have been having for the last year, in writing and orally, with the Office of the United States Attorney, on another case, but on an issue, 'place of service,' which is a prominent issue in this matter as well."  *Id.*  Relator's counsel advised the Court that he "believe[d] the issue is close to resolution, but, regardless, we will wait no longer."  *Id.*  The Court endorsed the letter the next day, instructing: "Counsel shall inform the Court by letter when service is effected."  *Id.*

On September 4, 2009, Relator served Maimonides with a copy of the Complaint and a summons bearing an issuance date of June 28, 2006; however, according to the docket, Relator still has not served E&Y despite his promise to do so.

## ARGUMENT

I.    **The Court Should Dismiss Relator's Complaint With Prejudice Under Rule 41(b) Because Relator Deliberately Refused To Prosecute This Four-Year-Old Action Seeking Billions Of Dollars For More Than One Year After The United States Declined To Intervene And For Almost One Year After The Complaint Was Unsealed**

"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1961).  The inherent power to invoke this ancient remedy, which is expressly recognized by Federal Rule of Civil Procedure 41(b), is "necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."  *Id.* at 629-30.  Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim

against it."  As set forth below, Relator's intentional decision to delay prosecution of this case for more than one year after the United States declined to intervene, in a failed attempt to achieve a strategic advantage, should result in a with-prejudice dismissal of this four-year-old action, which seeks billions of dollars in treble damages and civil penalties based on factual allegations dating back fifteen years.

As this Court recently explained in *SEC v. Shehyn*, No. 04 Civ. 2003 (LAP), 2008 WL 6150322 (S.D.N.Y. Nov. 26, 2008):

> The [Second Circuit] employs a five-factor analysis when considering motions to dismiss for failure to prosecute.  *See United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).  The factors are whether (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant is likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion outweighs plaintiff's right to an opportunity for a day in court; and (5) lesser sanctions are appropriate.  *Id.* at 254. . . .  "No one factor is dispositive, and ultimately [courts] must review the dismissal in light of the record as a whole."  *Drake*, 375 F.3d at 254.

2008 WL 6150322, at *5.  Indeed, the *Drake* decision cited by this Court affirmed the with-prejudice dismissal of *qui tam* claims similar to those at issue here.

In *Drake*, the relator filed his complaint under seal as required by the FCA.  *See* 375 F.3d at 251.  After the United States declined to intervene, the case was unsealed and the relator subsequently filed and served two amended complaints.  *See id.* at 251-52.  The defendants moved to dismiss the second amended complaint in its entirety.  *See id.* at 252.  In denying the defendants' motion to dismiss in part, the district court held that certain of the relator's legal claims were valid; however, the district court also found that certain of the relator's legal claims failed to plead fraud with particularity.  *See id.* at 253.  As a result, the district court dismissed the latter claims without prejudice, instructing the relator to file a third amended complaint within 60 days.  *See id.*  The relator failed to do so.  *See id.*

Nine months after the district court's decision on the defendants' motion to dismiss, the district court issued a ruling on cross-motions for summary judgment whereby certain of the relator's claims survived.  *See id.*  Six months later, the district court sent the relator a notice advising him that, due to inactivity, the relator's case was subject to dismissal unless he submitted a sufficient explanation within 20 days.  *See id.* at 254.  The relator's attorney responded within the 20-day time period by filing a third amended complaint and "explaining that the delay had been caused by the complexity of the claims, the large amount of discovery and motions, and scheduling conflicts."  *Id.*  The district court later granted the defendants' motion to dismiss the entire third amended complaint with prejudice for failure to prosecute.  *See id.*

The Second Circuit affirmed the district court's decision to dismiss the relator's amended *qui tam* claims.  *See id.* at 258.  The court of appeals rejected the relator's effort to blame his attorney for the delay, which the court of appeals deemed significant in length.  *See id.* at 255. As for prejudice to the defendants, the Second Circuit explained that "[p]rejudice may be presumed as a matter of law in certain cases" where the "delay was lengthy and inexcusable."  *Id.* at 256.  The Second Circuit agreed with the district court's conclusion that the defendants had been prejudiced with respect to the relator's amended claims, explaining:

> Plaintiff's second amended complaint contained claims that survived the [defendants' motion to dismiss] and [motion for summary judgment] and claims that were dismissed without prejudice (as well as claims that were dismissed with prejudice).  With respect to the claims that survived the rulings, defendants were on notice of the charges against them.  Defendants were therefore in a good position to preserve evidence and prepare their defense to these claims despite the delay in the essentially technical task of amending the complaint.  *With respect to the claims that were dismissed without prejudice, on the other hand, defendants were clearly in a much more difficult position.  The reason these claims were dismissed was that they were insufficiently specific.  Until these claims were repleaded, defendants were therefore in the dark as to the exact contours of the charges against them and so they would have had a much harder time preparing their defense.*

- 10 -

*Id.* (emphasis added).

Viewing the record as a whole, the Second Circuit held that the district court did not abuse its discretion by dismissing relator's amended claims with prejudice even though the court of appeals found that the relator did not receive notice that further delay would result in dismissal and the relator's delay had not impacted the trial calendar or otherwise impeded the district court's work.  *See id.* at 257-58.  According to the Second Circuit, the district court "was within its discretion to strike from the final amended complaint those claims that [the relator] had never pleaded with sufficient specificity to begin with.  As discussed above, we agree that defendants were significantly prejudiced by the delay in those claims because they were not given adequate notice of what those claims were."  *Id.* at 258.

Like the amended *qui tam* claims in *Drake*, the entirety of Relator's Complaint in this case should be dismissed with prejudice under Rule 41(b).  With respect to the first *Drake* factor—whether the plaintiff's failure to prosecute caused a delay of significant duration—Relator's refusal to prosecute this case for over one year after the United States declined to intervene and for almost one year after the Complaint was unsealed unquestionably caused a delay of significant duration.  This is especially true when one considers that this four-year-old action is based on factual allegations dating back fifteen years.  *See, e.g.*, *Ruzsa v. Rubenstein & Sendy Att'ys at Law*, 520 F.3d 176, 177 (2d Cir. 2008) (per curiam) (affirming district court's with-prejudice dismissal under Rule 41(b) after finding that plaintiff's seven-month delay in filing an amended complaint was a "delay of significant duration" in a case where "the events giving rise to this litigation occurred . . . nearly thirteen years ago").

It matters not whether Relator's delay in serving the Complaint was caused by his counsel.  As the Supreme Court explained in *Link*:

> There is certainly no merit to the contention that dismissal of [the plaintiff's] claim because of his counsel's unexcused conduct imposes an unjust penalty on his client.  [The plaintiff] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

370 U.S. at 633-34; *see also Drake*, 375 F.3d at 255 (rejecting relator's argument that first *Drake* factor looks only to personal conduct of relator); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir. 1980) (explaining that a "client is not excused from the consequences of his attorney's nonfeasance").  Furthermore, Relator's belated service of the Complaint on Maimonides almost one year after the Complaint's unsealing should not be accorded great weight in deciding whether to grant a Rule 41(b) dismissal.  *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) ("Because of the deterrence principle involved in dismissal for failure to prosecute, a plaintiff's hopelessly belated compliance should not be accorded great weight.") (internal quotations omitted).

As for the second *Drake* factor—whether the plaintiff was given notice that further delay would result in dismissal—the Second Circuit's 2004 decision in *Drake* provided sufficient notice that the type of conduct engaged in here could result in the with-prejudice dismissal of *qui tam* claims under Rule 41(b).  The Second Circuit issues relatively few published opinions involving the FCA.  For example, during the year in which *Drake* was decided, the Second Circuit issued only two other published opinions involving FCA claims.  *See United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*, 377 F.3d 145 (2d Cir. 2004); *Brown v. City of South Burlington*, 393 F.3d 337 (2d Cir. 2004).  Therefore, any attorney who practices in this Circuit and who focuses his or her practice on litigating cases under the FCA on behalf of *qui*

*tam* relators—as does Relator's counsel in this case—should be expected to have a familiarity with this Circuit's relatively limited FCA case law.

The events giving rise to this motion also satisfy the third *Drake* factor, which asks whether the defendant is likely to be prejudiced by the plaintiff's delay.  Prejudice resulting from unreasonable delay may be presumed as a matter of law.  *Drake*, 375 F.3d at 256; *Lyell*, 682 F.2d at 43.  In *Ruzsa*, for example, the Second Circuit recently held that a seven-month delay was sufficiently likely to prejudice the defendant because the events giving rise to the litigation occurred thirteen years earlier.  520 F.3d at 177.  Therefore, the court of appeals found that "further delay in prosecuting [the plaintiff's] claim was likely to prejudice [the defendant's] ability to defend against this suit, as the salient events receded even farther into the past."  *Id.* (internal quotation and alterations omitted).  The same is true in this case, where Relator's intentional decision to defer prosecution of this case for over one year caused a sufficiently lengthy and unreasonable delay.

The need to alleviate court calendar congestion also counsels in favor of dismissing Relator's Complaint under Rule 41(b).  "Burgeoning filings and crowded calendars have shorn courts of the luxury of tolerating procrastination."  *Chira*, 634 F.2d at 668.  According to the most recent statistics published by the Administrative Office of the United States Courts, for the twelve-month period ending September 30, 2008, this Court had 22,796 civil cases pending on its docket—more than every other district court in the Second Circuit combined.  Administrative Office of the U.S. Courts, *2008 Annual Report of the Director: Judicial Business of the United States Courts* app. 155, Table C-3A (2009).  Of those 22,796 civil cases, 3,385—a number that presumably included this case—had been pending for more than three years.  *Id.* app. 177, Table C-6.  During the twelve-month period ending September 30, 2008, each of this Court's author-

ized judgeships had a weighted average of 488 civil filings, a total higher than any other district court in the Second Circuit and one of the highest totals in the United States.  *Id.* app. 409, Table X-1A.  In light of these figures, Relator's intentional refusal to prosecute this case for over one year should not be tolerated, for it is just that type of lackadaisical litigation mentality that results in delayed justice for other parties plaintiff and defendant in this Court.

Finally, imposition of lesser sanctions would not be appropriate.  "When the district court considers the appropriate sanction for failure to prosecute an action, the more the delay was . . . designed to benefit the plaintiff's strategic interests, the more suitable the remedy of dismissal."  *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996).  Here, the sole reason for Relator's lengthy delay in prosecuting this case was his intentional effort to gain a strategic advantage through continued negotiations with the Government, which had already investigated Relator's legal claims and decided they were not worthy of intervention 513 days before Relator finally served the Complaint on Maimonides.

It is well-established that a relator is much more likely to receive a bounty (and his attorney a portion thereof, plus attorney's fees) if the relator can convince the Government to intervene and prosecute the action itself.  *See* H.R. Rep. No. 111-97, at 30 ("More than 97% of the amounts received in settlements and judgments in *qui tam* cases have come in the 20% of the matters in which the Government has intervened.").  Relator and his counsel know this all too well from personal experience.  *See, e.g.*, Government's *Ex Parte* Status Report at 2 n.1 [dkt. no. 11] (explaining that Relator's allegations in a different FCA case brought against a different hospital resulted in the Government intervening and an eventual $73 million settlement); Docket Entry No. 26, *United States ex rel. Pervez v. Beth Israel Med. Ctr.*, No. 01 Civ. 2745 (LAK) (S.D.N.Y. Nov. 30, 2005) (recounting content of order instructing that Relator was to be paid

approximately $15 million out of the $73 million settlement proceeds, care of his same counsel in this case).

Alternatively, Relator deliberately delayed prosecuting this case for more than a year—an unconscionable period of time after the statutory 60-day seal period for review had already been extended by two years—simply because Relator hoped a legal issue in another case would be resolved favorably for Relator's benefit and eventual use in this case.

Neither basis for delay is acceptable.  Relator's sixteen-month delay in prosecuting this case was intentionally designed to gain a strategic advantage against Maimonides.  Therefore, Second Circuit precedent instructs that a with-prejudice dismissal is the appropriate remedy.

* * *

For better or worse, Congress has allowed private bounty-hunters to borrow the Government's "big stick" of treble damages and per claim civil penalties under the FCA, which are used with great effect to cajole and intimidate.  In doing so, the FCA's *qui tam* provisions provide relators with extraordinary power to do both good and evil in the name of the United States.  *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949 (1997) (explaining that relators are "motivated primarily by prospects of monetary reward rather than the public good"); Note, *Qui Tam Provisions And The Public Interest: An Empirical Analysis*, 107 Colum. L. Rev. 949, 964 (2007) (concluding that Government intervention statistics suggest that FCA's *qui tam* provisions result in numerous unmeritorious suits).  The extraordinary power given to relators must be used in a responsible fashion.  The procedural background of this case reflects that the FCA's extraordinary power has been abused.  The FCA's unique filing-under-seal procedures already place defendants at a significant disadvantage as evidence deteriorates over time and memories fade.  Relators therefore have a responsibility to prosecute their cases with all reason-

- 15 -

able dispatch once the United States has declined to intervene.  That clearly was not done in this case.

"Delays have dangerous ends, and unless district judges use the clear power to impose the ultimate sanction [of with-prejudice dismissal] when appropriate, exhortations of diligence are impotent."  *Chira*, 634 F.2d at 668.  In light of the record as a whole, Relator's intentional decision to delay prosecution of this case for more than one year after the United States declined to intervene and for almost one year after the Complaint was unsealed warrants a with-prejudice dismissal under Rule 41(b).[2]

## II.    The Court Should Dismiss Relator's Complaint Under Rule 12(b)(5) Because Relator Deliberately Refused To Effect Service Of The Complaint Within The 120-Day Deadline Established By Rule 4(m)

A with-prejudice dismissal is the most appropriate remedy given Relator's deliberate refusal to prosecute this action.  Alternatively, the Court may dismiss the Complaint under Rule 12(b)(5) for insufficient service of process because Relator intentionally flouted the requirements of Rule 4(m).  In relevant part, Rule 4(m) instructs that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  In the context of *qui tam* suits under the FCA, Rule 4(m)'s 120-day time period begins to run once the district court unseals the relator's complaint.  *See, e.g.*, *United States ex rel. Cody v. Computer Sci. Corp.*, 246 F.R.D. 22, 27-28 (D.D.C. 2007) (granting

---

[2] A with-prejudice dismissal of Relator's Complaint would not have preclusive effect in the unlikely event the United States believes this case's underlying allegations have merit.  *See United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 1000 n.6 (2d Cir. 1995) (explaining that with-prejudice dismissal of relator's complaint for violating the FCA's secrecy requirements would not preclude a later suit by the Government based on the same allegations); *United States ex rel. LeBlanc v. ITT Indus.*, 492 F. Supp. 2d 303, 308 (S.D.N.Y. 2007) (same).

motion to dismiss because relator failed to serve complaint within 120 days of unsealing); *United States ex rel. Howard v. Life Care Ctrs. of Am., Inc.*, No. 1:03-CV-41, 2005 WL 2674939, at *2 (E.D. Tenn. Oct. 20, 2005) (same).

"By providing for sealed complaints" in the FCA context, Congress did "not intend to affect defendants' rights in any way.  Once the court has unsealed the complaint, the defendant will be served as required under Rule 4 of the Federal Rules of Civil Procedure and will not be required to respond until 20 days after being served."  S. Rep. No. 99-345, at 24 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289; *see also Henderson v. United States*, 517 U.S. 654, 662 (1996) (explaining that "Rule 4 changes made operative in 1983 [i.e., three years before Congress enacted the FCA's current seal procedures] completed a shift in responsibility for service from the United States marshals to the plaintiff").

This Court unsealed Relator's Complaint on September 23, 2008.  Relator therefore had until January 21, 2009, to serve the Complaint under the generous 120-day timeframe provided by Rule 4(m).  However, instead of serving the Complaint on two corporate defendants with known addresses or seeking leave of Court to extend the time for service—neither of which would have required much effort—Relator made the unilateral decision to ignore his Rule 4(m) responsibilities and to disregard this Court's October 6, 2008 deadline for advising the Court as to the status of this matter.  Only after this Court went to the trouble of sending Relator's counsel a facsimile on August 28, 2009, did Relator serve Maimonides on September 4, 2009—some 513 days after the United States declined to intervene in this matter, 346 days after the Complaint was unsealed, 333 days after the Court's deadline for an update regarding the status of this matter, and 226 days after the expiration of the Rule 4(m) deadline.  Adding insult to injury,

Relator apparently still has not served E&Y despite his September 1, 2009 promise to the Court that he would do so.

Nor does the belated and self-serving explanation given by Relator's counsel for his intentional disregard of Rule 4(m) establish good cause to extend the 120-day deadline *nunc pro tunc*.  "Good cause or excusable neglect is generally found only in exceptional circumstances where plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his control."  *McKibben v. Credit Lyonnais*, No. 98 Civ. 3358 (LAP), 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999); *see also Vincent v. Reynolds Mem'l Hosp., Inc.*, 141 F.R.D. 436, 438 (N.D. W. Va. 1992) (finding that plaintiff's intentional decision not to serve complaint "in order that other pending cases between these parties could be developed toward resolution" did not constitute good cause).  It is well-settled that "an attorney's inadvertence, neglect, mistake or misplaced reliance does not suffice to establish good cause for failure to make proper service within 120 days."  *Bey v. U.S. Postal Serv.*, No. 03 Civ. 4081 (LAP), 2005 WL 2923516, at *2 (S.D.N.Y. Nov. 4, 2005) (internal quotation omitted); *see also Deptuch v. Abraham Joshua Heschel School*, No. 06 Civ. 6000 (LAP), 2007 WL 4462194, at *1 (S.D.N.Y. Dec. 17, 2007) (granting motion to dismiss where plaintiff "made no effort to effect service within the service period" and "neglected to ask for an extension within a reasonable period of time").

By letter to the Court dated September 1, 2009 [dkt. no. 20], Relator's counsel stated that the "reason I have delayed this action is related to a substantive discussion I have been having for the last year, in writing and orally, with the Office of the United States Attorney, on another case, but on an issue, 'place of service,' which is a prominent issue in this matter as well."  In other words, Relator's counsel made the unilateral decision not to prosecute this action for over

one year after the United States declined to intervene.  Rule 4(m) instructs that such a decision

was not for him to make.

Therefore, in the event the Court does not dismiss the Complaint with prejudice for fail-

ure to prosecute under Rule 41(b), Relator's Complaint should be dismissed because of insuffi-

cient service of process in accordance with Rules 4(m) and 12(b)(5).[3]

## CONCLUSION

For the foregoing reasons, all claims asserted against Maimonides in Relator's Complaint

should be dismissed with prejudice.

Dated: New York, New York
      September 24, 2009

                      PROSKAUER ROSE LLP

                By:        s/Edward S. Kornreich
                      Edward S. Kornreich
                      Roger A. Cohen
                      1585 Broadway
                      New York, NY 10036-8299
                      (212) 969-3000

                      James F. Segroves[*]
                      1001 Pennsylvania Avenue, NW
                      Suite 400 South
                      Washington, DC 20004-2533
                      (202) 416-6800

                      *Counsel for Defendant*
                      *Maimonides Medical Center*

                      [*]*Motion For Admission Pro Hac Vice To Be Filed*

---

[3] As noted at the beginning of this memorandum of law, Maimonides believes that the Complaint also suffers from several substantive defects that could be raised in accordance with Rule 12(b)(6).  However, in the interest of not burdening this Court with unnecessary legal argument, and in light of the Court's 20-page limitation for memoranda of law, Maimonides respectfully requests leave to brief these additional, substantive issues in the event the Court finds the foregoing procedural violations nondispositive.