UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA *ex rel.*
NAJMUDDIN PERVEZ,                           :  06 Civ. 4989 (LAP)
                                            :
                Plaintiffs,                 :  ECF Case
                                            :
        -against-                           :  AFFIDAVIT IN OPPOSITION TO
                                            :  MOTION TO DISMISS
                                            :
MAIMONIDES MEDICAL CENTER and               :
ERNST & YOUNG LLP,                          :
                                            :
                Defendants.                 :
------------------------------------------------------------X
STATE OF NEW YORK    )
                     :
COUNTY OF NEW YORK   )

   PHILIP MICHAEL, being duly sworn, deposes and says:

   1.   I recently left my position as Of Counsel to Troutman Sanders LLP and I am a member of the law firm, Michael Law Group.

   2.   I am co-counsel with Troutman Sanders LLP, and we are the attorneys for the Plaintiff, United States of America *ex rel.* Najmuddin Pervez ("Plaintiff" or "Relator"), in the above captioned action. I am personally familiar with the facts and circumstances set forth herein and make this affidavit in opposition to the motion by defendant Maimonides Medical Center ("Defendant" or "Maimonides") for an Order: (i) dismissing the complaint with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure ("Rules" or "Rule") or, alternatively, (ii) dismissing the complaint without prejudice pursuant to Rules 4(m) and 12(b)(5).

   3.   This is a *qui tam* action prosecuted by the Relator on behalf of himself and the United States of America ("United States" or "Government"). The action is brought under the

False Claims Act ("FCA"), 31 U.S.C. §§3729-3733 against Maimonides and its certified public accounting firm, Ernst & Young ("E&Y").[1]

4. The complaint, a copy of which is annexed hereto as Exhibit A, essentially charges that for more than a decade Maimonides submitted false claims to the United States seeking reimbursement under the Medicare program and received multiple millions of dollars of unauthorized reimbursements. The false claims involved two fraudulent schemes. One involved false Medicare claims for services, primarily Evaluation & Management Services ("E&M Services"), furnished by doctors participating in Maimonides Faculty Practice Plan ("FPP"). The complaint alleges that Maimonides falsely listed the physicians' offices as the "site of service" on the Medicare reimbursement forms when in fact the services were actually furnished in offices that should have been assigned a "facility setting code" because the FPP physicians rendered services from "premises owned, operated and paid for by Maimonides and made available to the FPP physicians either at no cost or at lower than the market price" (Exhibit A, ¶¶31-75). By submitting false claims using the "non-facility code" rather than the "facility setting code," Maimonides is alleged to have received approximately 17 million dollars in excessive unauthorized Medicare reimbursements, generated by almost one hundred ninety-thousand falsely reported FPP Medicare patient services claims during the years 1995 through 2004. (Exhibit A, ¶¶76-100).

5. The second fraudulent scheme involved, in substance, false claims made by Maimonides by knowingly including costs incurred in support its FFP physicians' practices on its Medicare cost reports in reimbursable cost centers rather than, as required, in non-

---

[1] The Relator has determined not to prosecute this action against E&Y and, accordingly, the accounting firm was not served with the complaint.

reimbursable cost centers, resulting in approximately 71 million dollars in excess Medicare reimbursements between 1995 and 2004. (Exhibit A, ¶¶76-100).

      6.      The complaint was filed under seal on September 28, 2006 and served on the United States, which commenced an investigation to determine whether it would elect to intervene and proceed with the action. In order to conduct its investigation, the Government sought and obtained from the Court three lengthy extensions of the seal of more than a year and a half. During the course of the Government's investigation I had numerous face to face and written communications with members of the U.S. Attorney's Office regarding the two principal claims asserted in the complaint regarding false place of service reports and false cost reporting. More than a year and a half ago, I was told by attorneys from the U.S. Attorney's Office that the U.S. Attorney's Office had had numerous meetings with Maimonides regarding its Medicare reporting conduct, and that those discussions involved one or two of the interrelated reporting defalcations alleged in the complaint.

      7.      Ultimately, the United States elected, in April 2008, to decline to intervene in the case. Pursuant to an Order of this Court, dated September 23, 2008, almost two years to the day of the sealed filing of the complaint, the Clerk of the Court was directed to "unseal this action." A copy of that Order is annexed hereto as Exhibit B.

      8.      On August 28, 2009 I received a fax from the Court attaching a copy of the Court's order of September 23, 2008. A copy of the fax and Order are annexed hereto collectively as Exhibit C. In a responsive letter dated September 1, 2009, a copy of which is annexed hereto as Exhibit D, I informed the Court that the reason I had delayed service of the complaint was because for the past year I have been having written and oral communications

"with the Office of the United States Attorney, on another case, but on an issue, 'place of service,' which is a prominent issue in this matter as well."

9. Although I believed the matter was close to resolution, I stated to the Court that I would wait no longer and that the unsealed complaint would be served that week. On the next day, September 2, 2009, this Court's endorsement order was entered. That Order endorsed on your deponent's September 1, 2009 letter (Exhibit D) states: "Counsel shall inform the Court by letter when service is effected." Two days later, at the end of that week, on Friday, September 4, 2009 the complaint was served upon defendant Maimonides.

10. Maimonides' motion to dismiss the complaint is based upon the false claim, unsupported by evidence, repeated throughout its Memorandum of Law ("Def. Mem. p. ___"), that the Relator intentionally delayed the prosecution of this case in an "effort to gain a strategic advantage through continued negotiations with the government which had already investigated Relator's legal claims and decided they were not worthy of intervention." (Def. Mem. p. 14; see also, pp. 1, 9 and 15). Thus, Maimonides insinuates that your deponent deliberately delayed the prosecution of the action in an effort to convince the United States to reverse its determination not to intervene in the case. This I categorically deny. As I stated in my letter to the Court, (Exhibit D), "The reason I have delayed this action is related to a substantive discussion I have been having for the last year, in writing and orally, with the Office of the United States Attorney on another case, but on an issue, 'place of service,' which is a prominent issue in this matter as well." I was attempting to learn whether the Government had knowledge of facts that I had no knowledge of, or some theory, which would impel the Relator to delete the "place of service" claim from the complaint. This was not an attempt to gain an advantage, and in fact the result may have been, given more time, to benefit Maimonides.

11. Maimonides' motion is also based upon its inexplicable gross misreading of the decision of the Second Circuit Court of Appeals in <u>United States of America *ex rel.* Drake v. Norden Systems, Inc.</u>, 375 F. 3d 248 (2004). A detailed discussion of the true holding in that case is contained in the Relator's Memorandum of Law.

12. Maimonides' claim of actual prejudice should also be rejected. Maimonides, as I stated herein above, had been in discussions with the United States during the investigation period regarding Maimonides' reporting conduct. In addition, Maimonides had been under an audit by the New York State Inspector General (Audit #20092 34-213 P) for "place of service" violations from January 1, 2004 to December 31, 2008. At the very least, Maimonides knew that there was potential litigation and it had ample time to preserve documentary or other evidence or to obtain witness statements. Maimonides claims that prejudice should be presumed. If the Court were inclined to do that, Relator respectfully requests an opportunity to rebut any presumption through expedited discovery and a full hearing on the issue of prejudice.

WHEREFORE, your deponent respectfully prays that the instant motion be, in all respects, denied.

PHILIP MICHAEL

Sworn to before me this 22nd
day of October, 2009