UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* NAJMUDDIN PERVEZ, | : |
| | : 06 Civ. 4989 (LAP) |
| | : |
| Plaintiffs, | : ECF Case |
| | : |
| -against- | : |
| | : |
| MAIMONIDES MEDICAL CENTER and ERNST & YOUNG LLP, | : |
| | : |
| | : |
| Defendants. | : |

--------------------------------------------------------------X

### PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANT MAIMONIDES MEDICAL CENTER TO DISMISS

Troutman Sanders LLP
The Chrysler Building
405 Lexington Ave
New York, NY  10174
(212) 704-6000

Michael Law Group
326 West 246th Street
Riverdale, NY 10471
(917) 689-1734

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

FACTS AND PRIOR PROCEEDINGS ........................................................................ 3

POINT I ......................................................................................................................... 6

    DISMISSAL UNDER RULE 41(b) FOR FAILURE TO PROSECUTE IS A
    HARSH REMEDY UTILIZED BY COURTS IN THE SECOND CIRCUIT
    ONLY IN EXTREME SITUATIONS. IT WOULD BE AN ABUSE OF THIS
    COURTS' SOUND DISCRETION TO DISMISS THE COMPLAINT
    BECAUSE BASED ON THE WHOLE RECORD THE CIRCUMSTANCES OF
    THIS CASE DO NOT COME CLOSE TO THE LEVEL SUFFICIENT TO
    JUSTIFY OUTRIGHT DISMISSAL ................................................................... 6

POINT II ...................................................................................................................... 16

    MAIMONIDES' APPLICATION FOR DISMISSAL OF THE COMPLAINT
    WITHOUT PREJUDICE PURSUANT TO RULES 4(m) AND 12(b)(5)
    SHOULD BE DENIED BECAUSE PLAINTIFF SERVED THE COMPLAINT
    WITHIN THE TIME SPECIFIED PURSUANT TO AN ORDER OF THE
    COURT ............................................................................................................... 16

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

Chira v. Lockheed Aircraft Corp.,
    634 F.2d 664 (2d Cir. 1980)..................................................................6, 8, 10

Coats v. Department of Veteran Affairs
    268 Fed. Appx. 125 (2d Cir. 2008).....................................................11, 12, 14

Dodson v. Runyon,
    86 F.3d 37 (2d Cir. 1996)........................................................................6, 15

Drake v. Norden Systems, Inc.,
    320 F. Appx. 1 (2d Cir. 2009)..........................................................................8

Jackson v. City of New York,
    22 F.3d 71 (2d Cir. 1994)..................................................................6, 13, 15

Lyell Theatre Corp. v. Loews Corp.,
    682 F.2d 37 (2d Cir. 1982)....................................................................8, 10

Martens v. Thomann,
    273 F.3d 159 (2d Cir. 2001), aff'd, 114 Fed. Appx. 13 (2d Cir. 2004).......................12, 15

Minnette v. Time Warner,
    997 F.2d 1023 (2d Cir. 1993)..........................................................................6

Ruzsa v. Rubenstein and Sendy Attys. at Law,
    520 F.3d 176 (2d Cir. 2008)...........................................................8, 9, 10

SEC v. Shehyn,
    2008 WL 6150322 SDNY (S.D.N.Y. Nov. 26, 2008).............................................13, 15

United States of America ex rel. Drake v. Norden Systems, Inc.,
    375 F.3d 248 (2d Cir. 2004).......................................................... passim

## STATUTES

31 U.S.C. §§ 3729-3733 ...........................................................................1, 8

Fed. R. Civ. P. 4(m) .......................................................................1, 2, 5, 16, 17

Fed. R. Civ. P. 12(b)(5)...................................................................1, 2, 5, 16

Fed. R. Civ. P. 41(b) .....................................................................1, 2, 5, 16

Plaintiff United States of America *ex rel.* Najmuddin Pervez ("Plaintiff" or "Relator") respectfully submits this Memorandum of Law in Opposition to the motion of Defendant Maimonides Medical Center ("Defendant" or "Maimonides") to dismiss the complaint with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure ("Rules" or "Rule") or, alternatively, without prejudice under Rules 4(m) and 12(b)(5).

## PRELIMINARY STATEMENT

This is a *qui tam* action prosecuted by the Relator on behalf of himself and the United States of America ("United States" or "Government"). The action is brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, against Maimonides charging, in substance, that Maimonides for more than a decade made false Medicare reimbursement claims and obtained multi-millions of dollars in Medicare reimbursement payments that it was not entitled to.[1]

Maimonides' motion to dismiss the complaint is based on its speculative claim, unsupported by evidence, that the Relator intentionally delayed the service of the complaint for almost a year after it was unsealed in a failed effort to gain a tactical advantage by convincing the Government to reverse its decision not to intervene in the matter. Alternatively, Maimonides claims that the Relator delayed serving the complaint in the hope that a legal issue in another case would be resolved favorably for Relator's benefit and eventual use in this case. The affidavit submitted in opposition to the motion by Plaintiffs' counsel, Philip Michael, establishes what actually occurred. The Michael affidavit establishes that the delay was the result of his substantive discussions with the Government on another case, but involving an issue, "place of service," which is a prominent issue in this case. Far from seeking a tactical advantage, Mr.

---

[1] A copy of the complaint is annexed hereto as Exhibit A to the accompanying affidavit of Relator's counsel, Philip Michael, sworn to October 22, 2009.

Michael was attempting to determine whether the Government had knowledge of facts that he did not have knowledge of which would have compelled the Relator to delete the place of service claim from the complaint, an action that would have clearly been a benefit to Maimonides.

Maimonides' motion to dismiss is also based upon its inexplicable gross misreading of the holding of the Second Circuit Court of Appeals in <u>United States of America <em>ex rel.</em> Drake v. Norden Systems, Inc.</u>, 375 F.3d 248 (2d Cir. 2004), a <em>qui tam</em> case involving a 17 month delay in prosecuting the action. Maimonides claims that the Second Circuit affirmed the district court's dismissal under Rule 41(b) of the complaint in that action and for similar reasons this <em>qui tam</em> case involving a delay of approximately a year should also be dismissed. We demonstrate, however, that the Second Circuit in fact reversed the determination below holding that the district court had abused its discretion in the matter based upon the analysis of the five factor guidelines promulgated by the Second Circuit for reviewing a district court's discretion in dismissing a case under Rule 41(b). We also demonstrate that upon an analysis of each of the five factors and based upon the whole record in this case it would clearly be an abuse of the Court's discretion to dismiss this complaint with prejudice under Rule 41(b).

Finally, we demonstrate that Maimonides' claim that the complaint should be dismissed without prejudice under Rules 4(m) and 12(b)(5) is without merit because the complaint was properly served pursuant to this Court's endorsement order dated September 2, 2009. That Order either extended the time for service for an appropriate period under the second sentence of Rule 4(m) or the Court exercised its discretion under the first sentence of the Rule and ordered that service be made within a specified time, and service was made within that specified time.

Finally, we also demonstrate, through the Michael affidavit that Maimonides' claim of prejudice is specious. During its investigation of the complaint, the Government had numerous

meetings with Maimonides regarding its alleged reporting defalcations, and Maimonides was the subject of a New York State audit of its "place of service" reports from 2004 through 2008. Even if the Government did not discuss all of the claims asserted in the complaint, Maimonides, at a minimum, was on notice of the potentiality and context of litigation and had more than ample time to preserve necessary evidence and to obtain witness statements. Maimonides' further claim that prejudice should be presumed is not alone sufficient under the five guidelines to warrant dismissal. Moreover, the presumption is rebuttable and the Court should give plaintiff an opportunity to test the "prejudice" claim through expedited discovery and a full hearing on the issue.

## FACTS AND PRIOR PROCEEDINGS

Relator commenced this action by filing the complaint under seal on September 28, 2006 and serving it on the United States. The complaint, a copy of which is annexed as Exhibit A to the Michael Affidavit, essentially charges that for more than a decade Maimonides submitted false claims to the United States seeking reimbursement under the Medicare program and improperly received multiple millions of dollars of unauthorized reimbursements. There were two principal types of inter-related fraudulent claims. One involved false Medicare claims for Evaluation & Management Services ("E&M Services") furnished by doctors participating in Maimonides Faculty Practice Plan ("FPP"). The complaint alleges that Maimonides falsely listed the physicians' private offices as the "site of service" on the Medicare reimbursement forms, when in fact the services were actually furnished in offices that should have been assigned a "facility setting code" because the FPP physicians rendered services from "premises owned, operated and paid for by Maimonides and made available to the FPP physicians either at no cost

or at lower than the market price" (Exhibit A, ¶¶ 31-75).[2]  By submitting false claims using the

"non-facility code" rather than the "facility setting code,"  Maimonides is alleged to have

received approximately 17 million dollars in excessive unauthorized Medicare reimbursements,

generated by almost one hundred ninety-thousand falsely reported FPP Medicare patient services

claims during the years 1995 through 2004.  (Exhibit A, ¶¶ 76-100).

The second fraudulent category of false claims involved claims in which Maimonides is

alleged to have knowingly included costs incurred in support its FFP physicians' practices on its

Medicare cost reports in reimbursable cost centers rather than, as required, in non-reimbursable

cost centers, resulting in approximately 71 million dollars in excess Medicare reimbursements

between 1995 and 2004.  After the complaint was served on the United States, the United States

commenced an investigation to determine whether it would elect to intervene and proceed with

the action.  The Government's investigation took a considerable period of time.  It sought and

obtained from the Court three lengthy extensions of the seal of more than a year and a half.  As

the Michael Affidavit establishes, in the course of the Government's investigation attorneys from

the U.S. Attorney's Office had many face to face and written communications with Maimonides

regarding a principal claim asserted in the complaint regarding place of service reports.

Mr. Michaels has averred that more than a year and a half ago he was told by attorneys

for the Government that the U.S. Attorney's Office had had numerous meetings with

Maimonides regarding its Medicare reporting conduct, and was informed that those discussions

involved one of the inter-related reporting defalcations alleged in the complaint.

In April 2008 the United States informed the Court and Relator's counsel that it declined

to intervene in the case.  Pursuant to an order of this Court, dated September 23, 2008 (Exhibit

B) the Clerk of the Court was directed to "unseal this action."

---

[2] References to Exhibits are to the Exhibits annexed to the Michael Affidavit.

On August 28, 2009 the Relator's attorney received a fax communication from this Court attaching a copy of the Court's order of September 23, 2008 (Exhibit C).  Relator's counsel responded to the fax by letter dated September 1, 2009 (Exhibit D) informing the Court that the reason for the delay in serving the complaint was the fact that Relator's counsel, for the past year, had been engaged in written and oral communications "with the Office of the United States Attorney, on another case, but on an issue, 'place of service,' which is a prominent issue in this matter as well."  In that letter, Mr. Michael further stated that although he believed the matter was close to resolution, he would wait no longer and that the unsealed complaint would be served that week.[3]  On the next day, September 2, 2009 this Court endorsed an order on Mr. Michael's letter stating: "Counsel shall inform the Court by letter when service is effected." Two days later, at the end of that week, on Friday, September 4, 2009 the complaint was served upon defendant Maimonides.

Maimonides has made the instant motion to dismiss the complaint with prejudice under Rule 41(b) or, alternatively, without prejudice under Rules 4(m) and 12(b)(5) on the specious and speculative claim, unsupported by any evidence in the record, that the Relator deliberately failed to serve the complaint in an attempt to convince the Government to reverse its decision not to intervene or in the hope that a legal issue in another case would be resolved favorably for Relator's benefit and eventual use in this case.  The Michael Affidavit establishes that the reason for the delay was his ongoing discussions with the Government in an attempt to determine whether it had knowledge of facts that Mr. Michael did not have which would warrant the Relator's abandoning the place of service claim in the complaint, which would have greatly benefited Maimonides.

---

[3] The end of that business week was Friday, September 4, 2009.

Based upon the Michael affidavit, the whole record in this case and for the reasons hereinafter set forth in Points I and II, it is respectfully submitted that Maimonides' motion should be denied.

## POINT I

**DISMISSAL UNDER RULE 41(b) FOR FAILURE TO PROSECUTE IS A HARSH REMEDY UTILIZED BY COURTS IN THE SECOND CIRCUIT ONLY IN EXTREME SITUATIONS. IT WOULD BE AN ABUSE OF THIS COURTS' SOUND DISCRETION TO DISMISS THE COMPLAINT BECAUSE BASED ON THE WHOLE RECORD THE CIRCUMSTANCES OF THIS CASE DO NOT COME CLOSE TO THE LEVEL SUFFICIENT TO JUSTIFY OUTRIGHT DISMISSAL**

It has long been the law in the Second Circuit that although dismissal pursuant to Rule 41(b) is a matter within the discretion of the district court, it is a "harsh remedy to be utilized only in extreme situations" (Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)), and only after "a careful weighing of its appropriateness." Dodson v. Runyon, 86 F.3d 37, 39 (2d Cir. 1996); see also Jackson v. City of New York, 22 F.3d 71 (2d Cir. 1994) (vacating the district court's dismissal of the complaint on the grounds, *inter alia*, that the plaintiff was not on notice that her actions would result in dismissal of the case and because there was no indication that the court had considered lesser sanctions); Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir. 1980) ("the remedy [of dismissal for a failure to prosecute] is pungent, rarely used, and conclusive. A district judge should employ it only when he is sure of the impotence of lesser sanctions").

In United States *ex rel.* Drake v. Norden Systems, Inc., 375 F.3d 248, 251, (2d Cir. 2004), the Second Circuit reiterated that an involuntary dismissal under Rule 41(b) is "one of the harshest sanctions at a trial court's disposal," denying plaintiff his day in Court, so that it is

properly imposed only where "the circumstances [are] sufficiently egregious" or the plaintiff's

actions are "so contumacious" as to warrant dismissal of the complaint, Id. at 251.  In Drake, the

Second Circuit also observed that in recognition of the harshness of dismissal, it had fashioned

five guiding rules that limit a trial court's discretion in imposing a Rule 41(b) dismissal by

requiring the district court to first consider whether:

> "(1) the plaintiff's failure to prosecute caused a delay of significant
> duration; (2) plaintiff was given notice that further delay would result in
> dismissal; (3) defendant was likely to be prejudiced by further delay; (4)
> the need to alleviate court calendar congestion was carefully balanced
> against plaintiff's right to an opportunity for a day in court; and (5) the
> trial court adequately accessed the efficacy of lesser sanctions.  No one
> factor is dispositive and ultimately [the Second Circuit] must review the
> dismissal in light of the record as a whole."  (Internal citations omitted).

Based upon a mystifying misreading of the holding in the Drake qui tam case,

Maimonides argues that the Second Circuit affirmed the district court's decision "to dismiss the

entire third amended complaint with prejudice for failure to prosecute" and that for similar

reasons this Court should dismiss the instant qui tam case.[4]  Maimonides' argument is wholly

without merit because, inter alia, contrary to its skewed reading of Drake, the Second Circuit did

not affirm the district court's dismissal and in fact reversed and remanded, holding that in light

of its five factor guidelines and the record as a whole, the district court abused its discretion in

dismissing Drake's complaint.  As the Second Circuit observed (Id. at 258):

> **Looking at all of the above factors as well as the record as a whole, we
> are convinced that the district court abused its discretion in
> dismissing Drake's entire complaint.**  The circumstances of this case
> simply do not rise to the level needed to justify outright dismissal.  While
> 17 months is unquestionably a lengthy delay, we are dealing with a case
> that had already been delayed by three years while the government
> contemplated intervention . . . More importantly, this is not a case in
> which the plaintiff 'deliberately proceeded in a dilatory fashion' or
> ignored repeated warnings and deadlines, or where plaintiff's conduct
> could be viewed as contumacious with respect to the district court's

---

[4] That Drake involved qui tam complaint is plainly of no significance to the determination of the instant motion.

> direction.  On the contrary, plaintiff filed his final amended complaint as
> soon as he was warned that it was late.  Dismissing the whole case anyway
> at that point, in our view, constituted an abuse of discretion.  (emphasis
> added)(Internal citations omitted).

If there is any question as to the holding in <u>Drake</u>, one need only look to the Second Circuit's

recent decision in the second Drake case, <u>Drake v. Norden Systems, Inc.</u>, 320 F. Appx. 1, 2 (2d

Cir. 2009), a copy of which is annexed hereto for the convenience of the Court.  In the second

<u>Drake</u> case, the Second Circuit stated:

> This appeal is the second to this Court in this case alleging violations of
> the False Claims Act, 31 U.S.C. §§ 3729-3733.  The first appeal
> concerned a similar matter, namely the district court's dismissal, under
> Federal Rule of Civil Procedure Rule (41b) of Drake's complaint for
> failure to prosecute.  We affirmed in part <u>and reversed in part, and
> reinstated Drake's complaint concluding that the district court abused its
> discretion because</u> "we d[id] not agree that the circumstances were
> sufficiently egregious or that Drake's actions were so contumacious as to
> warrant dismissal of his entire complaint."  Drake v. Norden Sys. Inc.,
> ("Drake I"), 375 F.3d 248, 251 (2d Cir. 2004).

Applying the five factor guidelines promulgated by the Second Circuit and in view of the

whole record, it is clear that this case does not involve an extreme situation or circumstances so

egregious or conduct so contumacious as to warrant an involuntary dismissal under Rule 41(b) in

the exercise of the Court's sound discretion.

Relying on three inapplicable or readily distinguishable cases, <u>Ruzsa v. Rubenstein and

Sendy Attys. at Law</u>, 520 F.3d 176 (2d Cir. 2008); <u>Chira v. Lockeed Aircraft Corp.</u>, 634 F.2d

664 (2d Cir. 1980); and, <u>Lyell Theatre Corp. v. Loews Corp.</u>, 682 F.2d 37 (2d Cir. 1982),

Maimonides argues that the first <u>Drake</u> factor – whether the plaintiff's failure to prosecute

caused a delay of significant duration – weighs in favor of an involuntary dismissal.

Maimonides argues that the failure to serve the complaint for almost a year after its unsealing

-8-

was a delay of significant duration particularly because some of the False Claims Act conduct complained of are alleged in the complaint to have commenced as long ago as 1994 and continued to at least 2004.  Maimonides asserts that the 11 month delay in this case is a delay of significant duration because the Ruzsa court held that plaintiff's seven month delay in filing the amended complaint was a delay of significant duration in a case in which the events giving rise to the litigation occurred nearly 13 years ago.  Ruzsa, however, is wholly inapplicable.  Ruzsa involved a claim for malpractice and theft arising out of car accident.  The pro se plaintiff did not commence the action until December 12, 2005, ten years after the 1995 car accident.  While the Court could have had concerns in Ruzsa that under the peculiar circumstances of that case, any delay would be significant because memories could have already faded; witnesses could have moved away or died and any relevant documents might no longer exist, in the case at bar Maimonides was engaged in discussions with the Government two years ago regarding one of the two inter-related major claims of the Complaint.  Clearly, Maimonides was, at a minimum, on notice of an investigation by the United States, the possibility of litigation and what that litigation would concern and was then under an obligation to preserve electronically stored information and other evidence, and it surely had more than significant time to locate witnesses and obtain witness statements, if necessary.  In Ruzsa the Second Circuit sustained the district court's dismissal because the plaintiff violated a specific court order in February 2006 to file an amended complaint by March 31, 2006.  In the instant case, there is no violation of a court order. Moreover, in Ruzsa, the clerk of the court under local rules of the District of Connecticut gave the plaintiff notice that "further delay will result in dismissal." 520 F.3d at 177.  Here there has been no notice regarding any "further delay" or any notice regarding dismissal.  In substance, the district court and the Second Circuit in Ruzsa found that "the proceedings ground to a halt for

over seven months as a result of [plaintiff's] inaction" in the face of an existing court order.  Id.
Ruzsa is simply inapplicable.

Maimonides reliance on Chira, *supra* is also misplaced.  First, Chira was decided in 1980,
years before the Second Circuit promulgated its five factor guidelines for a review of a district
court's discretionary dismissal under Rule 41(b).  More importantly, Chira, unlike the case at
Bar, involved egregious circumstances and contumacious conduct.  In that case the court had
ordered the plaintiff to complete discovery within 6 months, but the plaintiff and his attorney
engaged in dilatorily and obstreperous conduct, clearly violating the court's order by not
completing discovery, including failing to appear for a deposition, making a frivolous motion to
disqualify the defendant's counsel; directing the plaintiff on at least a 120 occasions not to
answer questions when he was finally deposed, not on the ground of privilege but improperly on
the ground of relevance; and refusing to produce documents.  Moreover, the court found that
Chira and his counsel did absolutely nothing to move their case to trial so that under all of those
extreme circumstances Rule 41(b) dismissal was warranted.  None of those extreme
circumstances are even remotely present here.

Lyell Theatre Corp., *supra*, is also wholly inapplicable.  In that case, the Second Circuit
affirmed an order dismissing plaintiff's anti-trust case for failure to prosecute where the plaintiff
persisted in delinquent inactivity, adjournments, and delay over a seven-year span.  The opening
paragraph of the court's decision starkly highlights the dissimilarity between that case and the
case at Bar:

> After ten years of broken promises, inactivity and delay, the district court
> dismissed plaintiffs' complaint for failure to prosecute.  We affirm and
> write to make known our view on the appropriateness of the extreme
> sanction of dismissal.

682 F.2d at 38.

Moreover, in Lyell, unlike the case at Bar, the plaintiff was specifically warned on at least two occasions that its conduct might result in dismissal under Rule 41(b).  In this case, there have been no such warnings.  Indeed, as more particularly demonstrated in Point II, *infra.*, in this case the complaint was served pursuant to the Court's endorsed order within the time implicitly or explicitly set by the Court, which knew of the delay that had occurred with respect to service since the unsealing of the complaint and may have found plaintiff's counsel's explanation for the delay to be satisfactory and to constitute good cause.

Maimonides' argument that the delay here of less than a year should be held to be a delay of significant duration because in Drake the Second Circuit affirmed the Rule 41 dismissal of the complaint where there was a 17 month delay, is wholly unpersuasive.  In the first place, as noted earlier, the Second Circuit did not affirm the Rule 41 dismissal of the complaint and in fact found that the district court had abused its discretion.  Moreover, even though the Court in Drake observed that delays of much shorter duration had been found substantial enough to warrant dismissal, citing to the Chira and Lyell cases, the delays in those cases involved, as discussed above, violations of court orders exacerbated by years of obstreperous and egregious conduct, none of which is present here.

In Drake, the Court pointed out that duration is only one factor of the five and is not alone sufficient to warrant dismissal.  Thus, for example, in Coats v. Department of Veteran Affairs, 268 Fed. Appx. 125 (2d Cir. 2008), the Second Circuit vacated the district court's Rule 41(b) dismissal even though there had been a 17 month delay.  In considering the delay factor in this case, the Court should recognize that most of the time since the filing was the result of the Government's multiple extensions of the seal.  Moreover, the delay of less than a year since the unsealing should not be weighed against the plaintiff under the circumstances of this case.  It was

solely the result of action by plaintiff's counsel who was engaging in substantive talks with the Government, not as Maimonides claims without support, to obtain some unspecified "tactical advantage" but rather in an effort to obtain guidance that might have resulted in the elimination of the "place of service" claims which Maimonides asserts could result in over two billion dollars in civil penalties.  It should be borne in mind that Maimonides, despite its protestations, did not suffer any prejudice as result of the delay because it was in discussions with the Government regarding at least one of the issues raised in the complaint, it was being audited by the State on this issue and must have realized the possibility of litigation over two years ago and had ample time to preserve all records, to obtain any necessary witness statements, and to structure its defense.  Even if this Court, however, were to hold that the delay here was a "substantial delay" none of the other Drake factors weigh in favor of dismissal.

   The second Drake factor - whether the plaintiff was given notice that further delay would result in dismissal, weighs heavily against dismissal of the case at Bar.  In Drake, the Second Circuit cited to its earlier decision in Martens v. Thomann, 273 F.3d 159, 180 (2d Cir. 2001), aff'd, 114 Fed. Appx. 13 (2d Cir. 2004), which had vacated the district court's dismissal in part because "the district court did not give the individual plaintiffs express notice that further delays would result in dismissal" (emphasis added).  In Drake, the Second Circuit also pointed out that the court clerk's warning that the case would be dismissed unless Drake submitted a satisfactory explanation for his delay within 20 days was not notice that Drake's case would be dismissed if there was further delay.  Almost every Second Circuit case addressing the five factors has pointed to the importance of the requirement that the plaintiff be given express warning that further delay would result in dismissal.  See e.g. Coats v. Department of Veteran Affairs, supra; Martens v. Thonann, supra; United States ex rel. Drake v. Norden Systems, Inc., supra; See also

Jackson v. The City of New York, supra; SEC v. Shehyn, 2008 WL 6150322 SDNY (S.D.N.Y. Nov. 26, 2008).

Here Maimonides cannot point to any warning given to the plaintiff by this Court, by the clerk's office or by anyone that <u>further</u> delay or any delay would result in dismissal. Maimonides cannot point to any compliance with the second <u>Drake</u> factor and instead makes the lame argument, without any record support, that plaintiff's lawyer practices in the *qui tam* area and must have known of the <u>Drake</u> decision, which Maimonides claims provided sufficient notice to the Bar that the type of conduct engaged in here could result in a with prejudice dismissal of *qui tam* claims under Rule 41(b). This argument should be rejected out of hand. Every case turns on its own unique facts.

The third <u>Drake</u> factor - whether the defendant is "likely to be prejudiced by further delay"-also weighs heavily against dismissal of the instant case. Here, as in <u>Drake,</u> no further delay is contemplated because the complaint was promptly served after plaintiff was reminded through the receipt of the fax from the Court that service should be made, and service was promptly made in accordance with the Court's endorsement Order on that letter. In this case, unlike <u>Drake</u>, the Court should not conclude that Maimonides has been prejudiced by the delay. On the contrary, the record demonstrates that Maimonides had many discussions with the U.S. Attorneys' Office regarding its reporting conduct over two years ago. Maimonides was plainly on notice of the potentiality of an action and Maimonides had more than sufficient time to preserve all appropriate documents to obtain witness statements. Far from being prejudiced it was probably benefited by the delay. If the Court were nevertheless, to presume prejudice, such a presumption would be rebuttable and the Court should not dismiss, but rather should give the

Relator an opportunity to test Maimonides' claim of prejudice through expedited discovery limited to the issue of prejudice and a full hearing on that issue.[5]

With respect to whether prejudice may be presumed as a matter of law, the Court in Drake observed that the issue turns on the degree to which the delay was lengthy and inexcusable.  As the Second Circuit stated:

> In cases where 'delay is more moderate or excusable, the need to show actual prejudice is proportionally greater'.  In Shannon, for example, prejudice was presumed based on a two year delay in amending the complaint followed by a failure to respond to the court's notice that the case would be dismissed if there were further delays.  In Lyell, prejudice was presumed where the plaintiff repeatedly failed to file documents that the court ordered,  even after being warned that he was risking dismissal.  While there is no question that Drake's delay was both lengthy and inexcusable, it was plainly less contumacious than the delays in Shannon or Lyell. (Internal citations omitted).

375 F.3d at 256-257.

Here, any conduct on the part of the plaintiff that can be criticized is plainly far less contumacious than the delays in Shannon and Lyell so that it would be inappropriate to presume prejudice as a matter of law.  In any event the record demonstrates there was no prejudice in fact.

The fourth Drake factor – the need to alleviate court calendar congestion balanced against plaintiffs' right to an opportunity to a day in court also weighs against dismissal here.  The Second Circuit requires compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court.  Coats, 268 Fed. Appx. at 127.  Despite the sprinkling of statistics in Maimonides moving brief (Def. Mem. p. 13-14), it has not demonstrated any evidence of an extreme effect on the court congestion.  Perhaps more importantly, this Court is well aware of its own docket and calendar congestion, if any, and, we

---

[5] In making this argument and seeking expedited discovery and a hearing, Plaintiff does not mean to imply that prejudice alone is sufficient to warrant a Rule 41(b) dismissal.  On the contrary, the Court should make its determination based on all five of the factors promulgated by the Second Circuit and on the whole record.

believe, as Chief Judge, she is also aware of the dockets and calendar congestion, if any, of all of the judges in the Southern District.  Bearing that in mind, this Court in SEC v. Shehyn, supra, decided less than a year ago, denied a motion to dismiss under Rule 41(b) noting, *inter alia*, that in applying the fourth Drake factor it was unpersuaded that the need to alleviate court calendar congestion should deny the plaintiff its day in Court.  Clearly, on the record in this case the plaintiff should not be denied his day in court.

Second Circuit jurisprudence teaches that a Rule 41(b) dismissal is the harshest remedy and should not be imposed except where the circumstances are egregious, and even then only after the Court has considered the possibility of alternative penalties or lesser sanctions such as the imposition of financial penalties on the lawyer, the client or both.  Dodson v. Runyon, 86 F.3d 37, 41 (2d Cir. 1996); Jackson v. City of New York, 22 F.3d 71(2d Cir. 1994); Martens v. Thomann, 273 F.3d 159, 182 (2d Cir. 2001).  Maimonides argues that the imposition of a lesser sanction would not be appropriate on the ground that the delay of less than a year in serving the complaint was a deliberate effort by the Relator to gain some unidentified strategic advantage "through the continued negotiations with the government . . ."  Maimonides suggests, without record support, that the Relator's attorney's negotiations, openly disclosed in his letter to this Court (Exhibit D), was an attempt to convince the Government to reverse its decision not to intervene[6] (Def. Mem. p. 14), an action the Government has not taken, or "alternatively" that the Relator "hoped that during the delay, a legal issue in another case would be favorably resolved for Relator's benefit and eventual use in this case" (Def. Mem. p. 15).  Maimonides' arguments are based on sheer speculation without any support in the record and without any showing how the delay of less than a year, where the Government had obtained almost two years of extensions

---

[6] Maimonides never explains how the government's intervention would affect the merits of the claims or would result in prejudice to Maimonides.

of the seal, resulted in actual prejudice to Maimonides.  Indeed, the affidavit of Relator's counsel, Philip Michael, sworn to October 22, 2009 and submitted herewith, demonstrates that his negotiations with the Government were not an attempt to obtain a tactical advantage, but rather were to determine whether the Government possessed some special knowledge or even a theory regarding the "place of service" claims,  which would warrant their deletion from the complaint.  This would have resulted in a benefit to Maimonides.  Moreover, as the Michael affidavit demonstrates, Maimonides had numerous meetings with the Government regarding the case and cannot claim prejudice with a straight face.  Its argument that lesser sanctions are inappropriate is simply without merit.

Applying the 5 <u>Drake</u> factors and based upon the record as a whole, in light of all of the applicable authorities, it is respectfully submitted a Rule 41(b) involuntary dismissal of the complaint would be an abuse of the exercise of this Court's sound discretion.  Maimonides application in this regard should be denied.

**POINT II**

**MAIMONIDES' APPLICATION FOR DISMISSAL OF THE
COMPLAINT WITHOUT PREJUDICE PURSUANT TO
RULES 4(m) AND 12(b)(5) SHOULD BE DENIED BECAUSE
PLAINTIFF SERVED THE COMPLAINT WITHIN THE TIME
<u>SPECIFIED PURSUANT TO AN ORDER OF THE COURT</u>**

Maimonides argues that if the Court does not dismiss the complaint with prejudice under Rule 41(b), it should, nevertheless, dismiss the complaint without prejudice pursuant to Rules 4(m) and 12(b)(5).  Specifically, Maimonides contends that plaintiff failed to serve the complaint within 120 days after it was unsealed as required by Rule 4(m) and applicable case law, so that the service of the complaint was "insufficient" within the meaning of Rule 12(b)(5).  This argument is fatally flawed.  It ignores the fact that the compliant was served within the time specified in this Court's Order dated September 2, 2009 endorsed on the letter of plaintiff's

counsel, Philip Michael, dated September 1, 2009, in response to a fax from the Court attaching

the Court's prior Order of September 23, 2008.

Contrary to Maimonides' argument, Rule 4(m) and cases interpreting it do not require the

Court to dismiss the complaint without prejudice if it has not been served within 120 days from

the unsealing of the complaint.  Where the complaint has not been served within the 120 days,

Rule 4(m) expressly gives the Court the power to dismiss the action without prejudice or to order

that service be made in a specified time.  Thus, the precise text of Rule 4(m) is as follows:

> **Time Limited for Service.**  If a defendant is not served within 120
> days after the complaint is filed, the court – on motion or on its
> own after notice to the plaintiff – must dismiss the action without
> prejudice against that defendant **or order that service be made
> within a specified time.**  But if the plaintiff shows good cause for
> the failure, the Court must extend the time for service for an
> appropriate period.  (emphasis added)

Thus, under the plain language of the statue, if the complaint is not served within the

requisite 120 day period, the Court, pursuant to the second sentence of the statute, must extend

the time for service for an appropriate period "if the plaintiff shows good cause for the failure."

Under the first sentence of the statute, if the complaint is not served within the 120 day period,

the Court must dismiss the action without prejudice against that defendant or order that service

be made within a specified time.  Maimonides has conveniently ignored the language in the first

sentence of Rule 4(m) which expressly provides that instead of dismissing the action with

prejudice, the Court can order that service be made within a specified time.

Maimonides further conveniently ignores the fact that on August 28, 2009 this Court sent

a fax to plaintiff's counsel, Philip Michael, attaching its Order of September 23, 2008 which

required counsel for the Relator to inform the Court by letter "no later than October 6, 2008 as to

the status of the action/remaining claims/defendants."  Thus, the Court must have been quite

aware when it sent the fax that the complaint had not been served within the 120 day period.

Indeed the docket sheet contained no entries indicating that service previously had been effected.

In specific response to the fax from the Court, plaintiff's counsel sent the Court a letter dated September 1, 2009 explaining the reason for not serving the complaint following its unsealing and expressly stating that "the unsealed complaint shall be served upon the named defendants this week." Thus, pursuant to the letter plaintiff's counsel undertook to serve the complaint sometime between September 1, 2009, the date of the letter and the end of the business week, September 4, 2009. This Court endorsed the letter as follows: "Counsel shall inform the Court by letter when service is effected." Plainly, the effect of this so-ordered endorsement was either to "extend the time for service for an appropriate period" (under the second sentence of Rule 4(m))[7] or to require (under the first sentence of Rule 4(m)) that the complaint be served within the time specified by counsel, which implicitly or explicitly became the time specified by the Court by its So Ordered endorsement. Clearly, had the Court wanted to dismiss the complaint without prejudice it could and would have done so. Instead, it appears that it determined to require service within a specified time in accordance with the language in the first sentence of Rule 4(m), and service was in fact made within the time specified when service was made upon Maimondies on September 4, 2009. Consequently, Maimonides' claim that service was insufficient is without merit and the motion should be denied.

---

[7] At this point Plaintiff does not know whether the Court determined that he had shown "good cause" for the failure to serve within the 120 day period, so that its endorsement, read in light of the Michael letter, was an extension of time for service for the period stated in the letter, namely "this week."

-18-

## CONCLUSION

For all the foregoing reasons Maimonides' Motions should be, in all respects denied.


Dated: New York, New York
       October 22, 2009


TROUTMAN SANDERS LLP

BY: _Stephen F. Harmon_
    Stephen F. Harmon
    The Chrysler Building
    405 Lexington Avenue
    New York, NY 10174
    (212) 704-6112 (phone)
    (212) 704-6288 (fax)


MICHAEL LAW GROUP

BY: _____
    Philip R. Michael
    326 West 246th Street
    Riverdale, NY 10471
    (917) 689-1734 (phone)

-19-

# Appendix



**WALTER M. DRAKE, Plaintiff-Appellant, UNITED STATES OF AMERICA, Plaintiff, -v- NORDEN SYSTEMS, INC. Now known as NSI, Inc., UNITED TECHNOLOGIES CORPORATION, Defendants-Appellees.**

07-4763-cv

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

*320 Fed. Appx. 1; 2009 U.S. App. LEXIS 6713*

**March 30, 2009, Decided**

**NOTICE:**   PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
Appeal from the United States District Court for the District of Connecticut (Burns, J.).
*United States ex rel. Drake v. Norden Sys., 2007 U.S. Dist. LEXIS 69994 (D. Conn., Sept. 20, 2007)*

**COUNSEL:** Appearing for Appellant: JOHN DOAR, Doar Rieck Kaley & Mack, New York, N.Y. (David S. Golub, Jonathan M. Levine, Silver Golub & Teitell, Stamford, CT, on the brief).

Appearing for Appellee: BRIAN ELMER (Richard L. Beizer, Kyler E. Smart, Sujata E. Sidhu, on the brief), Crowell & Moring LLP, Washington, D.C.

**JUDGES:** Present: ROSEMARY S. POOLER, DEBRA ANN LIVINGSTON, Circuit Judges, JED S. RAKOFF, District Judge. *

   *   The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

**OPINION**

[*2] **SUMMARY ORDER**

   **AFTER ORAL ARGUMENT AND UPON CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said district court be and hereby is **VACATED AND REMANDED.**

Walter Drake appeals from a September 20, 2007 order of the district court granting Norden Systems, Inc.'s ("Norden") and United Technologies Corporation's ("UTC") Motion to Dismiss for Failure to Comply with the Court's February 10, 2005 Order and denying his Motion for an Evidentiary Hearing. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues [**2] for review.

This appeal is the second to this Court in this case alleging violations of the False Claims Act, *31 U.S.C. §§ 3729-3733*. The first appeal concerned a similar matter, namely the district court's dismissal, under *Federal Rule of Civil Procedure Rule 41(b)*, of Drake's complaint for failure to prosecute. We affirmed in part and reversed in part, and reinstated Drake's complaint concluding that the district court abused its discretion because "we d[id] not agree that the circumstances were sufficiently egregious or that Drake's actions were so contumacious as to warrant dismissal of his entire complaint." *Drake v. Norden Sys., Inc. (Drake I), 375 F.3d 248, 251 (2d Cir. 2004)*. Following reinstatement, the district court again dismissed Drake's complaint under *Rule 41(b)* for failure to comply with the court's February 10, 2005 order, which ordered Drake to file a fourth amended complaint conforming to the district court's and Second Circuit's rulings.

We review the district court's decision for abuse of discretion in light of the whole record. *See Drake I, 375 F.3d at 254*. "[A] district court abuses its discretion when its decision rests on an error of law (such as application [**3] of the wrong legal principle) or a clearly erroneous factual finding, or its decision -- though not necessarily the product of a legal error or a clearly erroneous factual finding -- cannot be located within the range of permissible decisions." *Wynder v. McMahon, 360 F.3d 73, 76 (2d*

*Cir. 2004)* (quotation marks and alteration omitted). "Generally, appellate review for an abuse of discretion suggests great deference. In [the *Rule 41(b)*] context, however, we have [repeatedly] recognized that dismissal is a harsh remedy and is appropriate *only* in extreme situations." *Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996)* (emphasis added); *see also Drake I, 375 F.3d at 251; Colon v. Mack, 56 F.3d 5, 7 (2d Cir. 1995); Jackson v. City of New York, 22 F.3d 71, 75 (2d Cir. 1994); Merker v. Rice, 649 F.2d 171, 173 (2d Cir. 1981)*.

> [T]he correctness of a *Rule 41(b)* dismissal is determined in light of the record as a whole and in consideration of the following factors: (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply [*3] would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay [**4] in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. Generally, no factor is dispositive.

*Spencer v. Doe, 139 F.3d 107, 112-13 (2d Cir. 1998)* (citations omitted). In assessing the first prong of this test, the district court correctly noted that it must consider whether: (1) Drake caused the delay, and (2) whether the delays were of significant duration. It then concluded that Drake caused the delay by failing to file a fourth amended complaint that conformed to its February 10, 2005 order. In doing so, the district court identified three areas of nonconformance: (1) Drake's addition of new claims, (2) Drake's inclusion of previously dismissed allegations, and (3) Drake's inclusion of claims barred by the statute of limitations.

Drake argues that the district court erred in making the above factual findings. We agree as to the district court's findings regarding the addition of new claims and inclusion of previously dismissed allegations, and conclude that dismissal based on the inclusion of claims [**5] barred by the statute of limitations "though not necessarily the product of . . . a clearly erroneous factual finding -- cannot be located within the range of permissible decisions." *Wynder, 360 F.3d at 76* (quotation marks omitted). In sum, the district court abused its discretion because reviewing the record as a whole, Drake's actions did not merit the extreme sanction of dismissal.

*New Claims.* We find clear error in light of the events preceding the insertion of the two new claims, both of which sought to impose a constructive trust on UTC. UTC, which had previously been dismissed as a defendant in the case, was the parent company to Norden, which became insolvent at some point prior to February 2005. After learning of Norden's insolvency, on February 10, 2005, the district court ordered Drake to file a fourth amended complaint "not later than sixty days after [Drake] has determined, following discovery discussed at the chamber conference of February 8, 2005, that this case should go forward. Four days later, Drake wrote to the court, copying opposing counsel, and reported that the parties agreed on the "likely time necessary for discovery concerning the issue of [UTC's] (or some [**6] other entity's) responsibility for any liability imposed on Norden in the above matter." Following a September 21, 2005 status conference, the district court issued an order requiring Drake to file his fourth amended complaint by October 6, 2005. Drake did so and included the two claims seeking to make UTC liable. The record reflects that at no point did the district court order Drake to refrain from adding new claims seeking to impose liability on UTC.

In its decision, the district court acknowledged the absence of such an order and that there was discussion about the insertion of new claims, but dismissed that concern because "there was no agreement that the propriety of the assertion of new claims would not be challenged." At the same time, the court acknowledged that at the time of its February 10, 2005 order, it was understood that the lawsuit could likely only proceed if Drake could transfer liability. Nonetheless, the court found nonconformance because, in its view, *Drake I's* affirmance of the district court's dismissal of unclear claims on the rationale that an inability to ascertain the contours of those claims would prejudice defendants, also barred the addition of new [*4] claims. [**7] We question whether this automatically follows, at least in the context of identifying sanctionable behavior, but in any event, find clear error because the district court's actions following *Drake I* allowed Drake to reasonably believe that he would not fall afoul of the February 10, 2005 order by adding the new claims. [1]

> 1   While we express no views on the merits of the district court's argument that Drake's constructive trust claims in the amended complaint (1) may prejudice the defendants and "contravene *Rule 9(b)*'s purpose" and (2) are "well outside the statute of limitations," we note that such concerns -- while they do not support the district court's finding of sanctionable nonconformance with prior orders -- might be an appropriate reason for the district court to exercise its discretion to deny

Drake leave to amend the complaint with the constructive trust claims. *See Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998)* (stating that when considering granting leave to amend the pleadings, "the trial judge's discretion is broad, and its exercise depends upon many factors, including undue delay, bad faith or dilatory motive on [**8] the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." (quotation marks omitted)); *Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000)* (noting that, in the context of opposing leave to amend, "a party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory" and "[i]nstead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case.").

*Previously dismissed allegations.* Though this finding causes us more pause, we again find clear error, particularly in view of the restraint that we have frequently advised district courts to exercise with regards to *Rule 41(b)* dismissals. It is true, as appellees point out, that Drake's revised complaint contained multiple references to documents -- disclosure statements, contracts, PRA reports, and UTC's Financial Manual -- that the court had previously held were not actionable under the FCA. More problematically, it included multiple catch-all paragraphs, which broadly alleged that all aforementioned [**9] documents, a statement that would include the barred documents, were actionable under the FCA.

Had the district court identified these catch-all paragraphs, and pinpointed them as the sole basis for its finding of nonconformance, we would be less inclined to find error. However, the court's finding of nonconformance focused differently. That finding recognized that Drake deleted references to the barred documents in his claims for relief. Notwithstanding, it found nonconformance based on its general finding that the complaint "repeatedly reference[d] the [barred documents]," a deficit that was unexcused by Drake's explanation that those references were inserted to establish scienter, and not as claims for payment, actionable under the FCA. The court found this explanation wanting because it interpreted its previous rulings as holding that the barred documents could not in any way form the "basis for an FCA claim," including scienter. We think the district court's previous decisions are more fairly read as holding that the barred documents were not, in and of themselves, claims for payment or false statements within the meaning of the FCA, and thus were not actionable within the statute's

[**10] provisions. Nowhere do those decisions address the question of scienter, which we note, without deciding, a plaintiff might reasonably believe can be established by reference to documents that are not themselves actionable. *See 31 U.S.C. § 3729(b)* (defining "knowing" and "knowingly" for the purposes of establishing scienter as meaning that a person, with respect to information: "(1) has actual knowledge of the information; (2) acts in [*5] deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information."). We also note, without deciding, that a plaintiff might reasonably believe that references to the barred documents helped fulfill the pleading requirement imposed by *Federal Rule of Civil Procedure 9(b)*, which requires that "a party must state with particularity the circumstances constituting fraud or mistake." *See Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1477 (2d Cir. 1995)* ("[C]ourts routinely require FCA claims to comply with *Rule 9(b)*."). Thus, it was clear error for the district court to find sanctionable nonconformance based on the reasons it provided with respect to the barred documents.

*Statute of* [**11] *limitations.* We find no clear error since our review of the record confirms that Drake's fourth amended complaint repeatedly referenced documents "submitted" on dates including "1987." Though this nonconformance was likely a result of careless drafting, it was nonconformance nonetheless.

Having found clear error in two out of three of the district court's findings, we deem it prudent to reverse and reinstate Drake's amended complaint. We do so not just because of these erroneous findings, but also because we believe that the district court's second dismissal -- without serious consideration of alternative sanctions -- did not conform to our admonition in *Drake I* that dismissals under *Rule 41(b)* are tools of final resort. *See Drake I, 375 F.3d at 251* ("[A *Rule 41(b)* dismissal is] one of the harshest sanctions at a trial court's disposal, since it usually extinguishes the plaintiff's cause of action and denies plaintiff his day in court. As a result, it is reserved for use only in the most extreme circumstances."). As in *Drake I,* "we [**12] do not agree that the circumstances were sufficiently egregious or that Drake's actions were so contumacious as to warrant dismissal of his entire complaint." *Drake I, 375 F.3d at 251.*

For the foregoing reasons, we VACATE the order of the district court dismissing Drake's complaint for failure to comply with a court order, *Fed. R. Civ. P. 41(b)*, and REMAND to the district court for proceedings not inconsistent with this opinion. Accordingly, we DISMISS AS MOOT Drake's appeal of the denial of his Motion for an Evidentiary Hearing.